# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 20, 2023

Lyle W. Cayce
Clerk

———————

No. 22-50196

———————

April Johnson, *an individual* and *as next friend of* A.N.E.R., *a minor*; A.N.E.R., *a minor child*, *an individual*,

> *Plaintiffs—Appellants/Cross-Appellees*,

*versus*

The City of San Antonio; Daniel Groce, *Officer, Badge #1182, individually and in his official capacity*; Does 1 through 25,

> *Defendants—Appellees*,

Gary Tuli, *Officer, Badge #517, individually and in his official capacity*; Jessica Osoria, *Officer, Badge #1422, individually and in her official capacity*,

> *Defendants—Appellees/Cross-Appellants*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-733

———————————————————————

Before Wiener, Stewart,[*] and Engelhardt, *Circuit Judges*.

———————————————

[*] Judge Stewart concurs in the judgment only.

No. 22-50196

Per Curiam:[**]

In 2017, A'Mynae Roberts attended her friend's quinceañera and found herself in the back of a police car, in disheveled clothes and handcuffed, for the alleged assault of a police officer. She asserted various § 1983 and state-law claims against three officers, Officer Tuli, Officer Osoria, and Officer Groce,[1] and the City of San Antonio (the "City").[2] She appeals the district court's grant of summary judgment in favor of the City and the court's dismissal of her state-law claims. Officer Tuli and Officer Osoria appeal the district court's denial of their summary-judgment motions. For the reasons set forth below, we DISMISS in part and REVERSE in part.

---

[**] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] Officer Groce and Officer Osoria jointly moved for summary judgment. Upon finding that there was no direct interaction between Roberts and Officer Groce and that there was no evidence indicating Officer Groce played any role in either effecting or witnessing Roberts' arrest, the district court granted summary judgment in favor of Officer Groce, but not Officer Osoria. In her appellate-court briefing, Roberts briefs the district court's "reversible errors as to officer Daniel Groce." But, according to her notice of appeal, Roberts did not appeal the district court's order granting in part and denying in part Officer Groce and Officer Osoria's joint motion for summary judgment. Rather, Roberts appealed "the Order Granting the City of San Antonio's Motion for Summary Judgment" and "the Order dismissing the Texas Tort Claims." Roberts argues: "[t]o the extent that Officer[] Daniel Groce and Officer[] Jessica Osoria acted in concert with Officer Gary Tuli in the manufacturing of the 'False Report', the District Court erred by unwittingly ignoring the genuine disputed issue of material fact which precludes the entry of Summary Judgment in favor of Officer Dani[e]l Groce." This is the extent of briefing dedicated to her claims against Officer Groce. Assuming that Roberts appealed the district court's disposition of her state-law claims asserted against Officer Groce, her failure to properly brief the claims results in forfeiture of her argument. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) ("It is not enough to merely mention or allude to a legal theory. … We have often said that a party must 'press' its claims.") (citations omitted). In any event, as explained below, we lack jurisdiction to review the state-law claims.

[2] At oral argument, Roberts' attorney confirmed that Roberts is the only plaintiff in the action.

No. 22-50196

## I. Facts & Procedural History

On May 20, 2017, Officer Tuli, Officer Groce, Officer Osoria, and approximately six other officers of the San Antonio Police Department ("SAPD") responded to an assault in progress between partygoers outside of a quinceañera.  Upon arrival, they met a large, angry crowd of about fifty to sixty people.  People were yelling at one another, and fights, brawls, and arguments broke out between different groups in multiple areas.  Roberts (then 14 years old) and her mother, April Johnson, were part of the crowd and allegedly engaged in the fighting.  Despite there being only eight or nine officers present (including Officers Tuli, Groce, and Osoria), the officers attempted to control the unruly crowd and separate fighting individuals.  At some point amidst the chaos, Officer Tuli told Johnson to "shut up" in an "aggressive way."  What happened next is disputed.

According to Roberts, she yelled to Officer Tuli, "don't talk to her like that!" and "made a gesture toward Officer Tuli" with her finger.  Then Officer Tuli punched her in the face.  The punch caused her to spin around and lose her balance.  As a result, her strapless dress fell, exposing her breasts.  She was handcuffed, placed in the back of an SAPD car, and taken to jail.  She was charged with assaulting a police officer.  Roberts states that she never hit Officer Tuli, made any movements with her arms in his proximity, or – as he says she did – called him a "white mother fucker."

According to Officer Tuli, Roberts yelled at him and attempted to instigate a fight.  He described Roberts as "being loud," "not following orders," and "an obvious threat based on her demeanor."  After Officer Tuli allegedly commanded Roberts to back away, Roberts moved closer to him, which provoked Officer Tuli to "lightly push[] her back."  Then, Roberts allegedly balled up her fists, took a bladed stance, struck the left side of Officer Tuli's face with her right fist, and called him a "white mother

3

fucker." After being hit, Officer Tuli says that he punched Roberts in the face with a closed fist and pulled her arms behind her back. Despite Roberts' continued fighting, pulling away, and struggling, Officer Tuli says that he and Officer Osoria effected the arrest and placed her in the police car.

According to Officer Osoria, Roberts was "definitely hostile." Roberts was allegedly not listening to lawful orders, was interfering with police duties, and was being loud. She then took a "fighter stance," says Officer Osoria, "charged towards [Officer Tuli]," and struck him on the left side of his face with a right closed fist. Officer Tuli then allegedly struck Roberts with a closed fist and attempted to arrest her. Officer Osoria's police report states that Roberts was uncooperative, disobeyed lawful orders, and refused to place her hands behind her back. Officer Osoria assisted Officer Tuli in the arrest by grabbing Roberts' arm, pulling it behind her back, and securing her up against a nearby vehicle. Because Roberts allegedly "caused a struggle" while the officers detained her, her top fell down and exposed her breasts. Officer Osoria says she attempted to cover Roberts by fixing Roberts' top, but was not able to do so because of Roberts' continuous struggling and failure to cooperate. Officer Osoria then allegedly walked Roberts over to a police vehicle and, once Roberts stopped struggling, deemed it was "safe" for her to adjust her top, which Officer Osoria did for Roberts in the back of the car. Afterwards, Officer Osoria reported that Officer Tuli complained of pain and minor swelling to his face.

This suit followed. Against Officer Tuli, Roberts brought claims for excessive force, assault and battery, and unlawful arrest and false imprisonment, all under § 1983; and state-law claims of intentional infliction of emotional distress and defamation. Against Officer Groce and Officer Osoria, Roberts brought claims for unlawful arrest and false imprisonment under § 1983 and state-law claims of intentional infliction of emotional distress and defamation. Against the City, Roberts brought claims for

unlawful arrest and false imprisonment, intentional infliction of emotional distress, and negligent hiring, supervision, training, and retention. All parties moved for summary judgment.

Citing genuine issues of material fact, the district court denied Robert's motion for summary judgment, granted the City's cross-motion for summary judgment, and granted in part and denied in part Officer Tuli's and Officers Groce and Osoria's cross-motions for summary judgment. The district court dismissed all state-law claims and all claims against Officer Groce and the City. The court then "terminated" Officer Groce and the City as parties to the suit as a result of its granting their respective motions for summary judgment. Following the district court's disposition of those motions, these claims remained: (1) an excessive force claim brought under 1983 against Officer Tuli; (2) unlawful-arrest and false-imprisonment claims brought under § 1983 against Officer Tuli; and (3) unlawful-arrest and false-imprisonment claims brought under § 1983 against Officer Osoria.

Roberts timely appealed the district court's: (1) grant of summary judgment in favor of the City; and (2) dismissal of her state-law claims. Officer Tuli and Officer Osoria timely appealed the district court's denial of their summary-judgment motions premised on qualified immunity.

## II. Roberts' appeal:

### A. The grant of summary judgment in favor of the City:

Roberts challenges the dismissal of her claims against the City. But our jurisdiction over Roberts' appeal of the district court's grant of the City's summary-judgment motion is suspect. "It is axiomatic that parties may not stipulate appellate jurisdiction. We are obliged, *sua sponte* if necessary, to examine the basis for our jurisdiction." *Borne v. A & P Boat Rentals No. 4, Inc.*, 755 F.2d 1131, 1133 (5th Cir. 1985) (citations omitted). "Under 28 U.S.C. § 1291, courts of appeals may review only 'final decisions' of the

district courts." *Williams v. Seidenbach*, 958 F.3d 341, 343 (5th Cir. 2020) (en banc). "[I]n a suit against multiple defendants, there is no final decision as to one defendant until there is a final decision as to all defendants." *Williams*, 948 F.3d at 343 (citing FED. R. CIV. P. 54(b) (absent an order to the contrary, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties")). But, "[w]hen an action involves multiple parties or claims, an order dismissing some of the claims is final for appellate purposes only if the district court (1) has made an express determination that there is no just reason for delay and an express direction for the entry of judgment, *see* Fed. R. Civ. P. 54(b), or (2) certifies the case for immediate appeal pursuant to 28 U.S.C. § 1292(b)." *Castille v. City of League City, Texas*, No. 21-40202, 2022 WL 175545, at *1 (5th Cir. Jan. 18, 2022) (per curiam) (unpublished).[3]

---

[3] *See also Askanase v. Livingwell, Inc.*, 981 F.2d 807, 809-10 (5th Cir. 1993) ("Federal appellate courts have jurisdiction over appeals only from (1) a final decision under 28 U.S.C. § 1291; (2) a decision that is deemed final due to jurisprudential exception or that has been properly certified as final pursuant to FED. R. CIV. P. 54(b); and (3) interlocutory orders that fall into specific classes, 28 U.S.C. § 1292(a), or that have been properly certified for appeal by the district court, 28 U.S.C. § 1292(b)."). As discussed below, the appeal of the district court's grant of the City's motion for summary judgment was not a final decision, was not certified as final pursuant to Rule 54(b), did not fall into one of the specific classes delineated by § 1292(a) – which governs (1) interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court; (2) interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; and (3) interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed – and was not certified for appeal under § 1292(b).

Here, the district court's order on the motions for summary judgment did not dispose of Roberts' §1983 claims against Officer Tuli and Officer Osoria. Thus, it adjudicated fewer than all of the claims of all of the parties. Nothing in the order or the record reflects an intent by the district judge to enter a partial final judgment. In fact, the order simply provides:

> All state law claims are DISMISSED and the § 1983 claims against Officer Groce and the City are DISMISSED. The Court orders Officer Groce and the City of San Antonio be TERMINATED as parties to this suit.
>
> IT IS SO ORDERED.

From this, the City correctly argues that we lack jurisdiction over the claims asserted against it because "[t]here is no clear, unmistakable declaration of appealability in the district court's order granting summary judgment to the City." Neither Rule 54(b)[4] nor § 1292(b)[5] supplies

_____

[4] Rule 54(b) provides:

When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

[5] Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is

jurisdiction for the appeal of the district court's grant of the City's summary-judgment motion.

Examining Rule 54(b) first, there is no indication that the district court unmistakably directed a final judgment as to the City. "If the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." *Kelly*, 908 F.2d at 1220. As the City points out, "unmistakable intent" is noticeably absent from the bare-bones language of the order granting its motion for summary judgment. Moreover, there is no record evidence that the district court ever certified its order dismissing the claims against the City as a "final" judgment under Rule 54(b). To that end, there is no record evidence that Roberts ever moved for entry of judgment under Rule 54(b) as to the order granting the City's summary-judgment motion. *See Kelly*, 908 F.2d at 1220. When, as here, there is neither an express determination that there is no just reason for delay and an express direction for the entry of judgment, nor any indication in the record that the parties sought such certification, there is no Rule 54(b) final judgment. Accordingly, we lack authority to adjudicate this appeal under Rule 54(b).

Examining § 1292(b) next, there is no indication that the district court declared § 1292(b)'s specific statutory dictates to certify the order's immediate appeal. Absent from the district court's ruling is any statement that the order involves a controlling question of law contemplated by the

---

made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

statute. And no party argues that such a question exists in this case. Noticeably absent, too, is any indication that an immediate appeal would materially advance the case's termination. Because the district court never certified the judgment dismissing the claims against the City as appealable under § 1292(b), we lack authority to adjudicate this appeal under the statute.

Without any indication from the district court's order or the record that Rule 54(b) or § 1292(b) permits an appeal, we lack jurisdiction. Roberts' appeal as to the district court's grant of the City's summary judgment motion is dismissed.

## B. Dismissal of Roberts' state-law claims:

Roberts challenges the dismissal of her state-law claims against Officer Tuli and Officer Osoria.[6] Roberts does not explain why we have jurisdiction over the dismissed state-law claims. Rather, she merely asserts that the district court's dismissal of such claims was in error. But our jurisdiction over the state-law clams is also suspect. And "[t]his [C]ourt has a continuing obligation to assure itself of its own jurisdiction, *sua sponte* if necessary." *United States v. Pedroza-Rocha*, 933 F.3d 490, 493 (5th Cir. 2019) (citing *Bass v. Denney*, 171 F.3d 1016, 1021 (5th Cir. 1999)).

Separate from its qualified-immunity analysis, the district court dismissed all state-law claims against the officers – assault, battery, intentional infliction of emotional distress ("IIED"), and defamation – as barred under the Texas Tort Claims Act ("TTCA"). Roberts states that this

---

[6] Although Roberts devotes argument to the district court's alleged error dismissing the tort claims asserted against Officer Tuli, it is unclear where she properly argues the same for Officer Osoria. She merely provides a one-sentence statement that the court's finding as to Officer Osoiria was in error. We assume, *arguendo*, that Roberts properly briefed the issue as to Officer Osoria, although there is a colorable waiver issue here.

No. 22-50196

was in error, but does not elaborate. She does not argue, or make reference to, pendent appellate jurisdiction. And she fails to contend that the orders on the state-law claims are inextricably intertwined with those on the qualified immunity issues or that conjunctive review is necessary to ensure meaningful review. Therefore, we decline to exercise jurisdiction and we dismiss the appeal as to the state-law claims for want of jurisdiction.

### III. Officers Osoria's and Tuli's cross appeals:

Officers Osoria and Tuli both challenge the district court's denial of their summary-judgment motions on qualified-immunity grounds. When claims are brought against multiple officers in connection with a single arrest, we "must analyze the officers' actions separately." *Buehler v. Dear*, 27 F.4th 969, 985 (5th Cir. 2022) (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018)). We first address the claims as they relate to Officer Osoria, then as they relate to Officer Tuli.

### A. Jurisdiction & standard of review:

"Qualified immunity shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) (cleaned up). This appeal is taken under the collateral order doctrine, which permits denial of a motion for summary judgment on the basis of qualified immunity to be appealed immediately as a final decision under 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Solis v. Serrett*, 31 F.4th 975, 980 (5th Cir. 2022) (quoting *Hanks v. Rogers*,

No. 22-50196

853 F.3d 738, 744 (5th Cir. 2017)).  On an immunity-based interlocutory appeal of a denial of summary judgment, "we do not apply the standard of Rule 56 but instead consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004); *see also Kokesh*, 14 F.4th at 39 (same).

Appellate review of an interlocutory appeal is limited.  *Solis*, 31 F.4th at 980.  Namely, "[d]istrict court orders denying summary judgment on the basis of qualified immunity are immediately appealable and reviewed *de novo only if* they are predicated on conclusions of law and not genuine issues of material fact." *Kokesh*, 14 F.4th at 390 (emphasis added); *see also Winfrey v. Pikett*, 872 F.3d 640, 643 (5th Cir. 2017) ("The district court's denial of summary judgment is immediately appealable 'to the extent it turns on an issue of law.'") (quoting *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)). "[W]e cannot review a district court's conclusions that a genuine issue of fact exists concerning whether a defendant engaged in certain conduct." *Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020).  In short, when the district court has held that there is a genuine dispute of material fact, "we have jurisdiction to review the materiality of any factual disputes, but not their genuineness." *Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (internal quotation omitted)).[7]  Accordingly, "[t]his Court is essentially reviewing the district

---

[7] "A fact is '*material*' if it '*might affect* the outcome of the suit under the governing law.'"  *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Id.*  "We review the materiality of fact issues *de novo*." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc).

court's decision that a 'certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law.'" *Kokesh*, 14 F.4th at 391 (quoting *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)). "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

## B. The defense of qualified immunity, generally:

To overcome the defense of qualified immunity, Roberts must satisfy a two-pronged test. First, Roberts must show that "the official violated a statutory or constitutional right." Second, Roberts must show that "the right was 'clearly established' at the time of the challenged conduct." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (quoting *Morgan v. Swanson*, 659

---

The district court found multiple facts in dispute, including whether: (1) Roberts ever yelled at Officer Tuli; (2) Roberts punched Officer Tuli in the face; (3) Officer Tuli struck Roberts once or multiple times; and (4) Roberts posed an immediate threat to the safety of the officers or others. The district court reviewed the police body camera videos and determined that, although they showed that Roberts' arms were moving, it is unclear whether she made contract with Officer Tuli's face. As a result, the court concluded that: (1) "there is a genuine issue of material fact as to whether Roberts assaulted Officer Tuli"; and (2) Roberts punching Officer Tuli "is determinative of whether Roberts committed any crime." When the district court identifies a factual dispute, we may evaluate whether it is material (*i.e.*, its legal significance). *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). "If a factual dispute must be resolved to make the qualified immunity determination, that fact issue is material and we lack jurisdiction over the appeal." *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009). The district court was wrong to characterize the factual dispute as to whether Roberts punched Officer Tuli as material. Whether Roberts actually hit Officer Tuli is not dispositive, as a battery is not necessary to constitute assault. As explained below, Roberts' behavior – even excluding the alleged punch – was enough to constitute probable cause to arrest. Whether Roberts did, in fact, hit Officer Tuli is not a fact issue that must be resolved to determine whether Officer Tuli and Officer Osoria are qualifiedly immune.

No. 22-50196

F.3d 359, 371 (5th Cir. 2011) (en banc)). "Although a case *directly* on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Id.* at 265 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)). Thus, "a clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

"Because the plaintiff is the non-moving party, we construe all facts and inferences in the light most favorable to the plaintiff." *Id.* at 261. Thus, "on interlocutory appeal the public official must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal." *Gonzales v. Dallas County*, 249 F.3d 406, 411 (5th Cir. 2001). It is noteworthy that this record on appeal includes eight videos from four different angles, slowed down to varying degrees. "'Although we review evidence in the light most favorable to the nonmoving party' on appeal from a district court's disposition of a summary-judgment motion, 'we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.'" *Buehler*, 27 F.4th at 979 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).[8] But that assignment only occurs when the plaintiff's version of events is so "blatantly contradicted" by the video on appeal that "no reasonable jury" could believe her. *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). As explained below, for the most part, the

---

[8] In other words, "[a] court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." *Carnaby,* 636 F.3d at 187 (internal quotation marks and citation omitted).

videos do, in fact, blatantly contradict Roberts' version of events. Accordingly, we view the evidence in the light depicted by the videotape and otherwise in the light most favorable to Roberts.

### C. Officer Osoria's appeal of the district court's partial denial of her summary judgment motion.

Officer Osoria challenges the district court's determination that she is not entitled to qualified immunity with respect to the claims of unlawful arrest and false imprisonment. To defeat Officer Osoria's qualified immunity defense, Roberts must first show that Officer Osoria violated a statutory or constitutional right. Then, Roberts must show that the right was clearly established at the time of the challenged conduct. *See Melton*, 875 F.3d at 261. We conclude that she is qualifiedly immune.

### i. Officer Osoria did not violate a statutory or constitutional right.

As a general matter, "[t]he right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994). "An arrest is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (citing *Hinshaw v. Doffer,* 785 F.2d 1260, 1266 (5th Cir. 1986)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (quoting *United States v. Levine,* 80 F.3d 129, 132 (5th Cir. 1996)) (emphasis in original).[9]   "To determine whether

---

[9] *See also Brown v. Lynch*, 524 F. App'x 69, 74 (5th Cir. 2013) (per curiam) (unpublished) ("Determining whether [the plaintiff] was arrested without probable cause requires that we trace the progression of events to locate the constitutionally significant point at which the stop escalated to an arrest ….").

probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decides whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss, Mississippi*, 33 F.4th 774, 780 (5th Cir. 2022) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (internal quotation marks and alterations omitted).

The standard for analyzing probable cause is whether, under the totality of the circumstances, there is a "fair probability" that a crime occurred. *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (quoting *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)). "The requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Id.* at 269 (quoting *Antone*, 753 F.2d at 1304). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

To succeed on her unlawful arrest and false imprisonment claims, Roberts must show that there was "not even arguably … probable cause" for her arrest. *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (internal quotation marks and citation omitted). "This probable cause may be for *any* crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 392 (5th Cir. 2017) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)) (emphasis added). "An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors." *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (citing *Atwater v. City of Lago Vista,* 532 U.S.

No. 22-50196

318, 354 (2001)).[10] And "[t]he police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." *Turner v. Lieutenant Driver*, 848 F.3d 678, 694 (5th Cir. 2017) (quoting *United States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013)). In sum, Officer Osoria is entitled to qualified immunity if a reasonable officer in her position could have believed that, in light of the totality of the facts and circumstances of which she was aware, there was a fair probability that Roberts had committed or was committing an offense. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004).

We begin by reviewing the events leading up to the arrest. Roberts states that while she was standing at the scene, she yelled at Officer Tuli, "don't talk to her like that!" In her deposition testimony, Roberts testified that when she made a finger gesture at Officer Tuli, her "hand did not extend out," her "arm did not extend out," and her gesture was not close to his face. The complaint alleges that, after she made the finger gesture, "[t]he next thing [Roberts] remember[ed] was Officer Tuli punching [her]." According to the complaint, Roberts felt like she was being "swung around" by the cops. And then she was handcuffed and ultimately arrested for an assault on a peace officer.[11]

The video footage tells a different story – enough to "blatantly contradict" a significant portion of Roberts' version of events so that we can assign greater weight to the facts evident from the video recordings.[12] *See*

_____

[10] *See also Chiles v. Hempstead*, 426 F. App'x 310, 311 (5th Cir. 2011) (per curiam) (unpublished) (citing *Lockett v. New Orleans City,* 607 F.3d 992, 998 (5th Cir.2010)) ("An officer has the right to arrest even for a very minor offense if the offense is committed in her presence.").

[11] The parties do not identify the statute that Roberts allegedly violated.

[12] The district court's impression of the footage is consistent with the following description. To the district court, it was clear that body camera footage showed that

*Ramirez*, 716 F.3d at 374. Officer Hillman's body camera sets the scene: a crowd of people jostling, fighting with, and yelling at one another. Shortly before Roberts interacted with Officer Tuli, Officer Cavazos's body camera reveals that Roberts quickly approached Officer Osoria out of the crowd; jerked her body and extended her arm towards Officer Osoria's head; yelled, "Don't touch me bitch! Don't fucking touch me!"; refused to back up after Officer Osoria directed her to; repeatedly approached Officer Osoria directly despite being directed to "back up"; and ultimately had to be restrained by an individual not in police uniform. The video from Officer Carrasco's body camera shows the interaction with Officer Tuli. Contrary to Roberts' version of events, the video does not show Roberts merely standing still, but rather shows her aggressively stepping in the direction of the area from which Officer Tuli comes into the video frame. It also shows Roberts fully extending her arm at an angle between 45 and 90 degrees. And it corroborates her yelling, "Don't talk to her like that." It then shows Officer Tuli approaching Roberts, the two struggling, and both Officer Tuli's arms and Roberts' arms flailing[13] about. Moreover, and importantly, footage from Officer Cavazos's body camera shows that, at the moment Roberts extended her arm and yelled, she was in close proximity to Officer Tuli – so close that he was able to make contact with her within a split second.

Officer Osoria stated in her deposition testimony that she saw the events with Officer Tuli unfold firsthand. She argues that she had probable cause to arrest Roberts because she observed Roberts: (1) assaulting Officer Tuli; (2) not following orders; (3) interfering with officer duties; (4) resisting

---

Roberts "walked in the direction of where officer Tuli was standing, quickly moved her arms, and yelled something at Officer Tuli."

[13] It is unclear whether Officer Tuli's and Roberts' arms flailing is a result of losing balance or throwing punches.

arrest; and (5) scuffling with officers. Viewing the evidence in the light depicted by the videotape but otherwise in the light most favorable to Roberts, at the moment of the arrest, a reasonable officer in Officer Osoria's position could have believed with "fair probability" that Roberts had assaulted Officer Tuli, was not following orders, and interfered with police duties. *See Haggerty*, 391 F.3d at 657 (concluding that probable cause existed when "[a] reasonable officer in [the officer's] position could have believed that the situation was tense and dangerous, [the plaintiff's] actions were serving to stir up the potentially explosive situation, and there was a fair probability that [the plaintiff's] actions constituted interference with his duties"). When Officer Osoria and others were attempting to control a combative crowd, and when Roberts interfered with that objective, did not follow directives, and yelled and flailed her arm in close proximity to the officers, a reasonable officer in Officer Osoria's position could agree that, under the totality of the circumstances, there was something more than a "bare suspicion" that a crime of some sort occurred at the time of her arrest. *See Garcia*, 179 F.3d at 269.

Roberts has not undermined Officer Osoria's reasonable belief that there was probable cause to support an arrest. Instead, she relies on conclusory statements like, "the conduct of Officer Jessica Osoria … when considering the true facts in this case, fall so far out of bounds of normal policing that [she] simply cannot be entitled to [q]ualified immunity." Roberts then states, "there remain genuine material disputed fact[s] that preclude[] the entry of summary judgment," yet fails to explain which facts are material. She contends that Officer Osoria "possessed no information that … Roberts committed any crime." But Roberts misunderstands the

probable-cause inquiry.[14]  "[P]robable cause 'is not a high bar.'"  *Loftin*, 33 F.4th at 780 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).  And after a review of the videos, it cannot be said that there was "*not even arguably*" probable cause for the arrest based on *any* crime here.  *See Brown*, 243 F.3d at 190 (emphasis added).  Viewed from the standpoint of a reasonable police officer, the facts of this case support probable cause such that no constitutional violation occurred.

### ii.  Even had Officer Osoria violated a statutory or constitutional right, the right was not clearly established at the time of the challenged conduct.

Even if Officer Osoria were mistaken with regard to there being probable cause, "law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000) (emphasis added). So, if an officer arrests someone without probable cause, qualified immunity will immunize the officer from suit unless that "officer had fair notice that her conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). This is the second step of the qualified-immunity inquiry. *See Melton*, 875 F.3d at 261 (observing that the plaintiff must show that "the right was 'clearly established' at the time of the challenged conduct"). "Fair notice requires clearly established law." *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020). "The onus is on the plaintiff to show that the law is so clearly established that 'every reasonable official' in the defendant-official's shoes

---

[14] Although Roberts contends that she committed no crime, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Deville*, 567 F.3d at 165 (quoting *Illinois v. Gates,* 462 U.S. 213, 244 n. 13 (1983)).

would know not to engage in the complained-of conduct." *Loftin*, 33 F.4th at 781 (citing *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)).

To show that the right was "clearly established," Roberts must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment" by arresting someone without probable cause. *Loftin*, 33 F.4th at 781 (citing *Wesby*, 138 S. Ct. at 590) (alteration omitted). But Roberts does not even attempt to identify a case in which a court found that an officer violated the Fourth Amendment in similar circumstances. "It is not enough to invoke the general principle that the Fourth Amendment prohibits a warrantless arrest without probable cause." *Loftin*, 33 F.4th at 781-82 (citing *Wesby*, 138 S. Ct. at 590). The onus is on the plaintiff to "provide some controlling precedent that squarely governs the specific facts at issue." *Craig v. Martin*, 49 F.4th 404, 419 (5th Cir. 2022) (citation and internal quotation marks omitted). Roberts has not carried her burden. Accordingly, Officer Osoria is entitled to qualified immunity even if probable cause were wanting.

## D.  Officer Tuli appeals the district court's partial denial of his summary-judgment motion.

For the unlawful-arrest, false-imprisonment, and excessive-force claims, Roberts must first show that Officer Tuli violated a statutory or constitutional right. Then, Roberts must show that the right was clearly established at the time of the challenged conduct. *See Melton*, 875 F.3d at 261. We first address Roberts' claims for unlawful arrest and false imprisonment. Then we address Roberts' claim for excessive force. We conclude that Officer Tuli is qualifiedly immune.

### i. Unlawful arrest and false imprisonment:

### a. Officer Tuli did not violate a statutory or constitutional right.

Like Officer Osoria, Officer Tuli is correct that there was probable cause to arrest Roberts.  Officer Tuli argues that Roberts could have been charged with a number of offenses, including: (1) assault on a public servant (Officer Tuli), Tex. Penal Code § 22.02; (2) assault on a public servant (Officer Osoria), Tex. Penal Code § 22.02; (3) attempted assault on Officer Tuli, Tex. Penal Code § 22.02; (4) attempted assault on Officer Osoria, Tex. Penal Code § 22.02; (5) interference with public duties, Tex. Penal Code § 38.15(a)(1); and (6) disorderly conduct; Tex. Penal Code § 42.01.  For the same reasons stated above, a reasonable officer in Officer Tuli's position would agree that, under the totality of the circumstances when the officers were attempting to control an unruly, disobedient, combative crowd and Roberts interfered with that objective, did not follow directives, and yelled and flailed her arm in close proximity to the officer's person, and then continued to flail her arms upon contact, there was something more than a "bare suspicion" that a crime of some sort occurred at the time of her arrest. *See Garcia*, 179 F.3d at 269.  Roberts has not undermined Officer Tuli's reasonable belief that there was probable cause to support an arrest.  And her conclusory statements that "there was no probable cause to arrest" are insufficient.

### b. Even had Officer Tuli violated a statutory or constitutional right, the right was not clearly established at the time of the challenged conduct.

Roberts does not even attempt to identify a case in which a court found that an officer violated the Fourth Amendment in similar circumstances.  As noted, "[i]t is not enough to invoke the general principle that the Fourth Amendment prohibits a warrantless arrest without probable cause." *Loftin*,

33 F.4th 781-82 (citing *Wesby*, 138 S. Ct. at 590). Roberts has not carried her burden. Accordingly, Officer Tuli, like Officer Osoria, would be entitled to qualified immunity even if probable cause were lacking.

### ii. Excessive force:

### a. Officer Tuli did not violate a statutory or constitutional right.

"The constitutional provision governing the claims against [Officer Tuli] is the Fourth Amendment, which protects the right to be free from excessive force during a seizure." *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). Whether a use of force is excessive and therefore a constitutional violation depends on whether there was "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "Claims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly unreasonable' depends on 'the facts and circumstances of each particular case.'" *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

### 1. Injury:

We first consider Roberts' injury. According to Roberts, it is "undisputed" that she suffered an injury. She contends that she was taken to the hospital and diagnosed with a concussion and brain injuries. At this juncture, for purposes of his motion, Officer Tuli does not challenge that Roberts suffered a sufficient injury.

### 2. Clearly excessive and clearly unreasonable:

Next, we consider the amount of force used and the reasonableness of resorting to such force. Courts generally consider these factors together, as "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). We apply the *Graham*[15] factors to determine whether the force used is "excessive" or "unreasonable." *Deville*, 567 F.3d at 167 (citing *Graham*, 490 U.S. at 396). These factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" with the recognition that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97 (citation omitted). "The test of reasonableness under the Fourth Amendment is not capable of ... mechanical application," but instead "requires careful attention" to each case's facts. *Id.* at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)) (alteration and internal quotation marks omitted). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of ... officials, giving them fair leeway for enforcing the law in the community's protection." *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, (1949)) (internal

---

[15] *Graham v. Connor*, 490 U.S. 386 (1989).

No. 22-50196

quotation marks omitted).  "[A]t the end of the day, the touchstone of our inquiry is simply the reasonableness of the force employed."  *Buehler*, 27 F.4th at 981.

### i. The severity of the crime at issue here weighs in favor of Officer Tuli.

This first factor weighs in favor of Officer Tuli.  Roberts was charged with assaulting a police officer.  Roberts, however, argues that because she "committed no crime, … there was no crime at issue."  Officer Tuli argues that assault of an officer is a severe crime, especially when considering the circumstances of the "riot" they encountered.  We agree.

### ii. Whether Roberts posed an immediate threat to the safety of the officers or others weighs in favor of Officer Tuli.

This second factor also weighs in favor of Officer Tuli.  Roberts states that she did not pose an immediate threat to the safety of Officer Tuli or others and references the fact that she "was only a child at the time,"[16] "very small compared to Officer Tuli," and unarmed.  But Officer Tuli contends that "Roberts was a violent[,] combative suspect who threw a punch at Officer Osoria and punched Officer Tuli during the melee in question."  The video footage shows Roberts quickly walking through the group of people

---

[16] At oral argument, Roberts' counsel repeatedly emphasized that Roberts was a minor at the time of the incident.  That the plaintiff is a minor has not stopped this court from finding that an officer is qualifiedly immune. *See, e.g., E.A.F.F. v. Gonzalez*, 600 F. App'x 205, 215 (5th Cir. 2015) (unpublished) (per curiam) (granting qualified immunity to police officers where case involved minor teenagers' excessive-force claims); *Wyatt v. Fletcher*, 718 F.3d 496, 504 (5th Cir. 2013) (granting qualified immunity to high school coaches where case involved minor child); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000) (granting qualified immunity to officers where case involved seven-month-old child); *Petta v. Rivera*, 143 F.3d 895, 914 (5th Cir. 1998) (granting qualified immunity to police officer where case involved a three and seven year old).

fighting, whereupon she: (1) jerks and flails her arm multiple times in close proximity to Officer Osoria; (2) shouts "Don't touch me bitch!  Don't fucking touch me!" at Officer Osoria as a nonuniformed person attempts to restrain her; (3) refuses to obey Officer Osoria's commands to back up; and (4) shouts at and flails her arm in close proximity to Officer Tuli.  It is not unreasonable to think that Roberts posed an immediate threat, despite being a fourteen year old (a fact not known to Officer Tuli or any other SAPD officer at the time), especially considering the extensive fisticuffs breaking out amongst the large, angry crowd that surrounded and outnumbered the officers, and Roberts' mad, confrontational behavior.

### iii.  Whether Roberts was resisting arrest weighs in favor of Officer Tuli.

This third factor also weighs in favor of Officer Tuli.  And this factor is the most "salient."  *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022).  Although Roberts summarily concludes that she did not resist arrest, the footage makes clear that, after Officer Tuli made physical contact with Roberts, a struggle ensued and arms flailed.  A plaintiff's struggling against an officer upon contact can reasonably be viewed as a form of resistance. *Solis*, 31 F.4th at 983.  Jerking motions, too, can be reasonably seen as an attempt to break free of an officer's grasp.  And "the great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest" under Texas law.  *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013).  Accordingly, it was reasonable for Officer Tuli to perceive Roberts as actively resisting arrest.

### iv.  The speed with which Officer Tuli resorted to force does not weigh in favor of or against Officer Tuli.

Although not listed as a *Graham* factor, this court also considers the speed with which the officer resorts to force. *See, e.g., Trammell*, 868 F.3d at

342 ("[T]he quickness with which the officers resorted to tackling Trammel [sic] to the ground militates against a finding of reasonableness."). "That is because 'an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance.'" *Solis*, 31 F.4th at 983 (quoting *Joseph*, 981 F.3d at 332-33)).

While Roberts does not describe any "measured and ascending actions" taken by Officer Tuli, she does not expressly claim that none were taken. Officer Tuli, on the other hand, testified that he: (1) told Roberts to back away, whereupon she closed distance on him; and (2) pushed her back slightly, after which she took a bladed stance, balled her fist up, and struck him in the face with a closed fist. At this stage in the proceedings, however, this court views the evidence in the light depicted by the videos and otherwise in the light most favorable to Roberts. The videos do not clearly show whether measured and ascending actions occurred. And Roberts neither claims nor refutes that such actions occurred. Thus, without any evidence that measured and ascending actions did or did not occur, this factor neither weighs in favor nor against Officer Tuli.

Taking these considerations together, Officer Tuli's actions were not so objectively unreasonable as to violate Roberts' constitutional rights. As previously noted, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[O]ur focus is on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker*, 998 F.3d at 176. Against the backdrop of a chaotic and angry crowd, it was reasonable of Officer Tuli to believe that some degree of force would be necessary to subdue Roberts, considering her: (1) vocal and physical interjections (*i.e.*, her shouting and repeatedly approaching the officers after being told to back up); (2)

comments and tone towards both officers (*i.e.*, her yelling, "Don't touch me bitch! Don't fucking touch me!" while a nonuniformed individual attempted to restrain her and "Don't talk to her like that"); and (3) flailing of arms in close proximity to officers.  Thus, Officer Tuli did not violate Roberts' constitutional right to be free from excessive force.

### b.  Even had Officer Tuli violated a statutory or constitutional right, the right was not clearly established at the time of the challenged conduct.

Even assuming Roberts could show that Officer Tuli committed a constitutional violation, Officer Tuli is nonetheless entitled to qualified immunity under the second prong of the qualified-immunity analysis.  As stated above in Section I(C)(1)(b), analysis of the second prong requires that we determine whether Officer Tuli's use of force "violated clearly established statutory or constitutional rights of which a reasonable officer would have known." *Craig*, 49 F.4th at 417 (quoting *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (internal quotation marks and alteration omitted). "In excessive-force cases, 'police officers are entitled to qualified immunity unless existing precedent *squarely governs* the specific facts at issue.'" *Garcia v. Blevins*, 957 F.3d 596, 600-01 (5th Cir. 2020) (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)) (emphasis in original).

As with the unlawful-arrest and false-imprisonment claims, Roberts has failed to provide controlling precedent – or any precedent at all – showing that Officer Tuli's particular conduct violated a clearly established right. "Although the plaintiffs need not point to a factually identical case to demonstrate that the law is clearly established, they nonetheless must provide *some* controlling precedent that 'squarely governs the specific facts at issue.'" *Craig*, 49 F.4th at 419 (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)) (emphasis added).  But Roberts has not provided such

precedent here and thus fails to show that the law clearly established that Officer Tuli's particular conduct was unlawful at the time of the incident. Moreover, this court's "qualified immunity jurisprudence is filled with cases recognizing the need for officers to use reasonable force to subdue and handcuff suspects who strike them or are otherwise resisting." *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015). And the videos show Roberts' arms flailing about in close proximity to Officer Tuli's person, which an officer could reasonably interpret as an assault or attempt to strike. So, Roberts has not overcome Officer Tuli's qualified-immunity defense. The district court must be reversed.

### E. The officers are qualifiedly immune.

Roberts cannot overcome the facts that Officer Osoria and Officer Tuli are qualifiedly immune from the unlawful-arrest, false-imprisonment, and excessive-force claims. While the officers acted reasonably, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "It likewise 'shields an officer from suit when the officer makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances the officer confronted.'" *Kokesh*, 14 F.4th at 392-93 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)) (alterations omitted). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks and citation omitted). And qualified immunity "is justified unless no reasonable officer could have acted as [the defendant officer] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officer did]." *Kokesh*, 14 F.4th at 393 (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019)) (alterations in original).

Based on the summary judgment record before us, Roberts has failed to show that no reasonable officer could have acted as Officer Tuli and Officer Osoria did here, when: (1) the officers were trying to control a large, boisterous, and angry crowd; (2) the officers were outnumbered; and (3) Roberts repeatedly approached Officer Osoria after being told to back up, approached Officer Tuli while performing police duties, yelled, "Don't touch me bitch!  Don't fucking touch me!" while a nonuniformed individual attempted to restrain her and "Don't talk to her like that," and jerked her body and flailed her arms in close proximity to the officers.  Under the circumstances, the officers were not "plainly incompetent" and there is no evidence that they knowingly violated the law.  The district court, then, was wrong to deny Officer Tuli and Officer Osoria qualified immunity.

## IV. Conclusion

In sum, we lack jurisdiction to review the district court's grant of summary judgment in favor of the City and its disposition of the state law claims.  So we DISMISS the appeal as it relates to these issues.  Moreover, the district court erred in denying qualified immunity to Officer Tuli and Officer Osoria.  So we REVERSE as to the qualified immunity issues, and remand for further proceedings consistent with this opinion.